EMILY T. PETERSON ET AL. v. TIDEWATER POWER COMPANY.

(Filed 29 March, 1922.)

**1. Negligence—Evidence—Questions for Jury—Fires.**

The defendant, at the beginning of the season at a summer resort, took the plaintiff's keys to connect up the gas, which had been cut off, and as was the custom, lighted the gas with matches after connection made to test whether it was working satisfactorily. There was evidence tending to exclude any probability of fire except that used in the testing by defendant's employees; and that an hour or two after they left, witnesses seeing smoke from the dwelling, broke into it and saw large flames of gas from the gas piping where the defendant's agents had been at work, which caused the conflagration resulting in the loss of the dwelling: *Held*, sufficient evidence of defendant's actionable negligence to sustain a verdict in the plaintiff's favor.

**2. Evidence — Negligence — Damages — Tax Lists—Hearsay—Res Inter Alios Acta.**

Where the amount of the plaintiff's damage for the negligent burning of the plaintiff's dwelling is at issue, the amount on the tax list given by the plaintiff's predecessor in title is not admissible as tending to show the value of the building destroyed, it being but hearsay and *res inter alios acta*, and not the estimate of value given by the plaintiff.

**3. Appeal and Error—Unanswered Questions—Negligence—Damages—Evidence—Dwellings—Values—Questions for Jury—Trials.**

Where the value of a building destroyed by fire is relevant to the inquiry in an action to recover damages, the value of another building which had theretofore stood on the same site, is competent as a circumstance to be considered by the jury, when there was evidence that the two were substantially identical with each other; but where the answer to the question is not given, the question will be held as harmless.

**4. Damages—Fires—Rules of Insurance Companies—Negligence.**

The rules of insurance companies relative to placing insurance upon a certain class of dwellings is not competent on the inquiry as to the value of a dwelling of that class destroyed by fire, which is the subject of the plaintiff's action to recover damages of the defendant for its negligence in causing the loss.

APPEAL by defendant from *Connor, J.*, at the October Term, 1921, of NEW HANOVER.

This was a civil action, brought by the plaintiffs to recover damages of the defendant for the alleged negligent burning by the defendant of the *feme* plaintiff's cottage and furniture at Wrightsville Beach.

At the trial the defendant admitted the plaintiff's ownership in fee simple of the lands and premises described in the complaint, but required the plaintiffs to put in the deed which showed the purchase price of the property alleged to have been destroyed through the negligence of the defendant.

The defendant admitted in the pleadings that it was a corporation, engaged in the business of supplying the town of Wrightsville Beach and persons along its system with electricity for lights, power, and gas for lighting, heating, cooking, and other purposes, charging its usual rates for gas and electricity. That upon the tract of land described in the complaint was a summer residence or cottage, which was not occupied during the winter months, but occupied only during the summer months, and that the plaintiff had household and kitchen furniture for living purposes in said cottage, and was preparing to move down and occupy said cottage for the summer season, expecting to begin such occupancy on 3 June, 1920.·

That it was the custom of the company to cut off its supply of electricity and gas to cottages in the early fall by disconnecting, in some manner, the supply of gas and electricity from such cottages at the main pipe and wires feeding said cottages, and that before gas and electricity were turned into the cottages they required the owner, or persons expecting to occupy such cottages to make application to the defendant for connecting up and turning on the gas and electricity, and required the keys to the cottage to be surrendered to the defendant, so that they might enter the same and inspect the meters and connect with the. supply of electricity and gas, which had been disconnected the previous fall.

·That on 31 May, 1920, application was made for gas service for the plaintiffs' cottage, and the keys to the same were turned over to the defendant, to enable it, or its agents, or servants, to enter such cottage and connect up the gas fixtures so that the plaintiffs could use and consume gas according to their needs for cooking and heating purposes, and that the plaintiffs paid the defendant its charges for such service. That it was the custom of the defendant immediately after making the necessary connections, to turn on the flow of gas and light the same in order to ascertain whether or not its patrons would be able to receive the expected service. That in disconnecting the gas in the fall, the defendant's custom was to disconnect the metal or iron pipe which conducted the gas through the meter at some point inside the building, near where the pipe entered the meter, and this was the method used in the plaintiff's cottage.

That on 1 June, 1920, between the hours of 11 and 12 o'clock a. m., before the plaintiffs had moved into said cottage, the defendant's servants or employees entered said cottage to connect up, test out, and put in proper condition the gas fixtures for use by the plaintiff, and that in a very short time after the defendant's employees had left the cottage, fire was discovered in the kitchen or rear part of the cottage, at and around where the defendant's employees had been working and connecting the

gas, and that gas from the defendant's pipe was pouring out into said cottage a burning flame, and the plaintiff's cottage and furnishings were completely destroyed and consumed by the said fire.

The foregoing facts are substantially admitted in the pleadings, the only denials of the defendant being that as to negligence and the value of the property destroyed by the fire, the defendant stating, in the ninth paragraph of its answer, that it was probably more than an hour after defendant's employees left the house before the fire was discovered.

The evidence tended to show, in addition, that when Mr. Peterson moved out of the cottage the previous fall, all matches and combustible materials had been removed from the cottage. That Mr. Peterson, about a week previous to the fire, and before he surrendered the keys to the defendant company, for the purpose of connecting up the gas and electricity, visited the cottage and left the same securely locked· and fastened, and that there was no fire in the cottage. That the defendant's employees, during the morning, about 12 o'clock, entered the cottage with the keys to install the meter and connect the gas in the kitchen, and this they did, and after doing so, lighted the gas to test it out. There is no evidence that any other person from that time until the fire was discovered, was in, at, or around the plaintiff's cottage. That Mrs. Peterson left Lumina on the 1:15 car and went to visit Mrs. Colucci, who was occupying the cottage next to Peterson's, and after she had been on the porch for a few minutes she heard a noise in the Peterson cottage, which sounded like that made when she turned on the gas in her gas range and put the match to it, when it doesn't catch, making a "sizzling noise," and she called the attention of Mrs. Colucci to the same. A few minutes thereafter she saw fire coming out of the weatherboarding, where a few minutes before she had seen smoke coming from the cottage. She tried the doors and found them locked, and could not get in. The kitchen door was then forced open and flames were found burning around the gas meter. The noise which she heard when she first called Mrs. Colucci's attention to it was like that of gas coming out of a pipe.

John Cowan testified that when the door was broken open all he could see was an arm of flame coming out with a hissing sound.

Mrs. Jacobs testified that the meter was near the gas stove and a long flame was coming out, making a "sizzling sound," and that she heard the noise before the cottage was broken into.

The cottage and its contents were totally destroyed by the fire.

*E. K. Bryan for plaintiffs.*
*Rountree & Carr for defendants.*

WALKER, J.  We are of the opinion that the testimony of the witnesses tended to show that before the defendant's servants entered the cottage for the purpose of connecting the house fixtures with the main outside, so as to furnish a supply of gas for domestic uses, Mr. Peterson, one of the plaintiffs and owners of the cottage, had gone into it and upon leaving the cottage he securely locked and fastened the same, and there was no fire in there.  It further appears by the testimony that there was nothing in the house that would cause a fire, until the defendant's employees entered it to do the work the defendant had ordered them to do.  Soon after the workmen had finished—or supposed they had—fire broke out and consumed the cottage.  No one, so far as appears, entered the building from the time the workmen left it until the fire was first discovered, by neighbors, coming through the weatherboarding and the roof.  A door of the kitchen—where defendant's servants had been working an hour or two before, at the gas meter—was broken open and flames "were coming out of the gas pipe of the meter in the kitchen," with a hissing sound.  The kitchen was so full of smoke that another witness could not tell where the flame was coming from.  The fire was in that part of the house, or kitchen, where the work had been done an hour or so before.  How long it was after the workmen left the building and the first appearance of the fire was not definitely fixed, but it was not so long as to exclude altogether the reasonable inference, which the jury could draw, that the cause of the fire, and the only probable cause, under the circumstances, was some negligent act committed by the workmen, in connecting the pipes.  *McRainey v. R. R.,* 168 N. C., 570.  There was some evidence that they used matches in making tests to discover if there was any escaping gas, and the jury, under the evidence, would be warranted in finding that the fire was started by the careless handling of the matches.  It was competent and proper for the jury to consider the testimony of Hufham and Burt Kite, and other testimony of a similar kind, as to how the work of connecting the pipes, and especially the testing of them, was done, as affording some evidence in support of plaintiffs' allegation and contention that the fire originated in the house from some cause attributable to the manner in which the work was done by defendant's employees, or to their negligent conduct.

We are fully aware of the rule stated in *Byrd v. Express Co.,* 139 N. C., 273, that the proof of negligence causing damage must be of such a nature as to reasonably warrant an inference of the fact required to be established, and must be more than merely conjectural, but we do not think that the evidence in this case falls within the class which we there excluded as insufficient to be considered by the jury, as there is some testimony here which reasonably tends to prove the act of negligence. There is evidence from which the jury could reasonably infer that all

other causes for the fire had been eliminated, leaving none but those attributable to defendant's want of care, or that of its employees, which is the same thing.

Our last observation is an adequate answer to the position taken by the defendant that there is no proof of the origin of the fire, or any which tends reasonably to show that it is imputable to the defendant's negligence, or that of its servants engaged at the time in doing the work of connecting the pipes in the house for it, and the cases cited by the defendant in its brief to sustain its position are not applicable to the facts of this case, while the principle of law stated in them is admitted to be correct.

There was no error in the ruling of the court by which the tax lists, as evidence of the true value of the property, were excluded. Williams owned the property when the lists were made up, and not the plaintiffs. It would be competent to show any estimate of its value made by the plaintiffs, but that was not what was proposed to be done. It was therefore hearsay (res inter alios acta), and incompetent. Ridley v. R. R., 124 N. C., 37; R. R. v. Land Co., 137 N. C., 330; Hamilton v. R. R., 150 N. C., 193; Powell v. R. R., 178 N. C., 243, at p. 249. What is said in the case last cited, at page 249, is pertinent: "The court excluded the circumstances that where the official board of valuation had assessed property at a higher rating after the alleged injury, the then owner, ancestor in title of the present plaintiff, appeared before them and endeavored to have same reduced. So far as the action of the board of assessors was concerned it has been generally ruled irrelevant on the question of valuation. Hamilton v. R. R., 150 N. C., 193. And as to the action of the plaintiff's predecessor in title, his action as indicated tended to favor his own position on the issue, and its exclusion could in no sense be held to have prejudiced defendant's case." This fits our case exactly.

The estimate of the witness Peterson, as to the value of the property destroyed, was permitted to be considered by the jury, not for the purpose of showing that the old cottage and the new cottage built on the same site were of the same value, but a substantial identity in the construction of the two having been first shown, it was allowed to go to the jury merely as a circumstance, to be considered by them, in finding the amount of loss or damage, and admitted, as it was, with this restriction, we think it was competent. The learned judge carefully guarded his ruling by requiring that the two buildings must have been substantially alike, in order for them to consider the value of the one as a circumstance bearing upon the value of the other, and not as being of the same value. This evidence was allowed to be considered by the jury, we suppose, upon the authority of Belding v. Archer, 131 N. C., 287, and

*Powell v. R. R.,* 178 N. C., at pp. 248 and 249, citing R. C. L., pp. 175-176. Such evidence, when confined within its proper limits, should not be objectionable, as said in the last cited case. But the witness did not answer the question, nor are we informed what his answer would have been if he had been permitted to answer the same. It was therefore harmless, as we have so often held.

We do not see how the rules of the insurance companies relative to placing insurance on beach property was at all relevant or competent.

The other exceptions are without any merit, and, upon the whole case, after a careful review of it, we find no ground for disturbing the judgment of the court below.

No error.

STACY, J., took no part in the consideration and decision of this case.