LEONARD AUSTIN, JR., ADMINISTRATOR OF THE ESTATE OF GILBERT J. AUSTIN, DECEASED v. RICHARD C. AUSTIN.

AND

LEONARD AUSTIN, JR., ADMINISTRATOR OF THE ESTATE OF MARCIA HESS AUSTIN, DECEASED, v. RICHARD C. AUSTIN.

(Filed 6 April, 1960.)

1. **Automobiles § 21, 41r— A person who lends his car to another with knowledge express or implied of defective brakes may be liable for accident resulting from brake failure.**

   Evidence tending to show that defendant owned an automobile equipped with hydraulic brakes, that he had the brakes checked before a long trip, that on the trip the brakes worked well at first but later the brake pedal had to be depressed excessively before the brakes applied, that he then had brake fluid put in the master cylinder, and finished the trip, that after the trip he lent the car to another without advising such other person of the trouble with the brakes and without making or having made any inspection of the brake system, and that shortly thereafter the person driving the vehicle had a fatal accident as a result of the total failure of the brakes, with further evidence that defendant understood the mechanics of hydraulic brakes, and that after the accident the master cylinder was empty of fluid and that *indicia* that the brake system was leaking around the wheels was discoverable by reasonable inspection, *is held* sufficient to raise the issue of whether defendant was negligent in turning over his car to be driven by another when he knew, or in the exercise of reasonable care, should have known that the brakes were defective, and failed to warn the prospective driver of such defect. G.S. 20-124(a).

2. **Negligence § 24c—**

   It is not required that negligence be proven by direct evidence, but proof of facts and circumstances establishing negligence and proximate cause as the more reasonable probability is sufficient to take the issue to the jury.

APPEAL by plaintiff from *Campbell, J.,* November 9, 1959 Regular Civil Term, MECKLENBURG Superior Court.

Two civil actions for wrongful deaths growing out of an accident alleged to have been caused by defective brakes on defendant's automobile which he permitted Marcia Hess Austin to drive without warning her of the defects. The first action involved the injury to and death of Gilbert Austin, age one year. The second involved the death of Marcia Hess Austin, age 21. The two actions were consolidated and tried together. From judgments of nonsuit at the close of plaintiff's evidence, plaintiff appealed.

*Coughenour & Coughenour, Helms, Mulliss, McMillan & Johnston, James B. McMillan, Larry J. Dagenhart for plaintiff, appellant.*

*Kennedy, Covington, Lobdell & Hickman, By: Hugh L. Lobdell, R. Cartwright Carmichael, Jr., for defendant, appellee.*

HIGGINS, J.  On the trial the plaintiff offered the adverse examination of the defendant. The following is his story in material substance: At the time of the accident, August 7, 1957, the defendant was a Staff Sergeant in the Marine Corps, stationed at Corps Headquarters, Washington, D. C. During "off hours" for five or six days each week for about two years he worked at a filling station, servicing automobiles. "My work in that filling station included putting brake fluid in cars from time to time; . . . My work did not include looking at the pipes that lead from the master cylinder to see if there might be leaks in the pipe. . . .I did know that wheel cylinders would leak. I did know that leaky wheel cylinders is one reason why the fluid level gets low in the master cylinder."

Two days before the trip to North Carolina, "I was working in the station . . . when it (the car) was gassed and put in shape for the trip to North Carolina. I checked the water . . . The mechanic checked the brakes." The vehicle was a 1951 Oldsmobile, equipped with hydraulic brakes. The defendant, speaking of hydraulic brakes, said: "It is a system in which the fluid that you put in the master cylinder is supposed to last for an indefinite time." The defendant had owned the Olds for about four months, having bought it secondhand.

In describing the trip to North Carolina, the defendant said: "We came through Danville on the way down. At or near Danville, I noticed my brake pedal was down. I mean when you put your foot on the brake pedal it would go down farther than it should . . . When I noticed the brake pedal was soft or going down, I stopped in a ser-

vice station in Danville and had the brake fluid checked. I did not have any other part of the car checked except the fluid in the master cylinder. I had the brake fluid checked because the brakes were low and naturally it came to my mind it would be low on brake fluid. When a car runs out of brake fluid, to the best of my knowledge, the brakes go out. I did not examine any of the pipes or linkage between the brake pedal and the wheels when I stopped at Danville. I had never had brake fluid put in the car before that day. . . .This was the first time the brake pedal had gotten soft on me. I do not recall whether it was getting a little worse as I drove along. I did not make any inquiry of the mechanic at Danville or the filling station attend-ant as to why he thought the brake fluid was low."

"After I added brake fluid in Danville . . . I checked my brakes a time or two to see how they were operating. . . .They operated all right after we left the filling station."

The defendant drove from Danville to the home of his brother, Leonard Austin, near Salisbury. The defendant's wife and his one-year-old daughter made the trip with him. At the brother's home the two families decided to go to Charlotte. In order that the brothers might be together, it was agreed they would ride in Leonard's Chev-rolet and that their wives and the little daughter and little son would ride in the defendant's Oldsmobile; and that Marcia Hess Austin would do the driving. The defendant made no disclosure to Marcia Hess Austin of the condition of his brakes or the trouble he had had with them. The trip to Charlotte was begun within less than five hours from the time brake fluid was added in Danville.

On the way to Charlotte, Leonard Austin and the defendant were in front. Both cars were proceeding south on the Rimertown Road. At a point where this road made a T intersection into the east and west Gold Hill Road, the men stopped. The approach to the inter-section on the Rimertown Road is down-grade. On the south side of the Gold Hill Road, at the top of the T, there is a bank eight or ten feet high. As Marcia Hess Austin approached the intersection the automobile failed to reduce speed and crashed into the south bank of the Gold Hill Road. As she approached the intersection, she ex-claimed, "The brakes are gone." In the accident Mrs. Austin was killed. The son suffered injuries from which he died two or three days later. Examination of the vehicle after the accident disclosed the master cylinder was empty. "The right rear wheel had been saturated with brake fluid, that is, the tire and inner tube," were wet. There was also evidence of partially dried brake fluid on the outside of the wheels.

Joseph P. Clark testified as an expert witness. He had spent two years in technical training study in the General Motors Institute at Flint, Michigan. He testified: "The brake system which the 1951 Olds 98 had . . . is the same on all hydraulic brakes consisting of a master cylinder . . . three flexible tubes and four wheel cylinders . . . there is a small piston or . . . actuating levers, and rubber synthetic tubes or rubber cups. It is assembled as a system which should have no air in it, it should be free from leakage at all times. . . .The principle of liquid hydraulics which makes it possible for pressure in the master cylinder to operate a lever in the wheel, . . . the pressure of all four wheels is equal; . . . the result if a hole develops in that system is the fluid will be squirted out under pressure. . . .you apply the brake until it went to the floor and you would have no brake . . . the presence of brake fluid outside of this system indicates . . . a leak in the system somewhere. If thereafter the brake fluid is replenished in the reservoir of the master cylinder, . . . The addition of the fluid would have the temporary effect to build up your brake as long as it had fluid in it. . . .If you have got a leak every time the brake is applied pressure is exerted in the system, there is going to be a loss of either minor or major part of the fluid in the system."

There was evidence the distance from Danville to Salisbury is about 100 miles. From the plaintiff's home to the scene of the accident is about five miles. The evidence does not disclose whether Mrs. Austin had occasion to apply the brakes prior to the approach to the intersection. At that time they were gone. It is not improbable, therefore, the defendant delivered to Mrs. Austin a vehicle totally without brakes.

The question is: Did the defendant breach his duty to the intestates of the plaintiff by delivering to Mrs. Austin an automobile when he knew, or by the exercise of ordinary care should have known, the brakes were defective and operation was dangerous? The defendant, while not a mechanic, had worked during "off-hours" for two years as an attendant at a filling station. On occasion he serviced automobiles by putting brake fluid in the master cylinder. Two days before the trip to North Carolina he had the brakes adjusted by a mechanic. "At or near Danville I noticed my break pedal was down. . . .When I noticed that the brake pedal was soft or going down I stopped in a service station in Danville and had brake fluid checked. I did not have any other part of the car checked . . . I had the brake fluid checked because the brakes were low and naturally it came to my mind it would be low on brake fluid. . . .When a car runs out of brake fluid, to the best of my knowledge the brakes go out. . . .I did not ex-

amine any other pipe or linkage between the brake pedal and the wheels when I stopped in Danville." Not once, either in Danville or Salisbury, or between these towns, did the defendant have the fluid lines examined. The brake trouble developed rather suddenly, yet he made no effort to remove, or even to ascertain the cause, though opportunities were numerous and immediately available. He admitted knowledge the brake fluid became low near Danville. Should he not have anticipated the same result from further use until the cause was removed? Inspection at Danville would probably have disclosed a leak in the system. Inspection at the brother's home near Salisbury would have shown both partially dried and wet brake fluid on the right rear wheel, or at least that was the condition shown by the examination after the wreck.

G.S. 20-124(a) requires that every motor vehicle operated upon the public highway of the State shall be equipped with brakes adequate to control its movement, and that such brakes shall be maintained in good working order.

No North Carolina case is found exactly in point. Resort must be had to the holdings in other jurisdictions and to the recognized rules of negligence in this State. The case of *Hudson v. Drive It Yourself, Inc.*, 236 N.C. 503, 73 S.E. 2d 4, gives the duties of a bailor for hire (not quite our case): "A bailor for hire, while not an insurer, may be liable for personal injuries to the bailee or third persons proximately resulting from the defective condition of a rented automobile while being used by the bailee for the purpose known to be intended, if the bailor was aware of the defective condition or by reasonable care and inspection should have discovered it. 131 A.L.R. 845; *Trusty v. Patterson*, 299 Pa. 469; *Ferraro v. Taylor*, 197 Minn. 5; *Milestone System, Inc., v. Gasior*, 160 Md. 131. . . . It is a breach of the bailor's duty to let out an automobile for hire for use on the highway with materially defective brakes when he is aware or by the exercise of due care by reasonable inspection should have known of such defective condition." See also *Jones v. Chevrolet Co.*, 217 N.C. 693, 9 S.E. 2d 395; *Harward v. General Motors Corp.*, 235 N.C. 88, 68 S.E. 2d 855.

In *Bush v. Middleton*, 340 P. 2d 474, the Supreme Court of Oklahoma said: "The general rule . . . appears to be that the owner of an automobile when entrusting a vehicle to a third person for operation . . . must use ordinary care to see that the automobile . . . is not in such a condition as to become dangerous . . . and his failure to use such care . . . constitutes negligence . . . rendering him liable for damages . . ."

In the case of *Nash v. Reed,* 59 S.E. 2d 259 (Ga.) the court held the complaint stated a cause of action which alleged the defendants Nash owned an automobile. Mrs. Nash could not drive. Mrs. Reed habitually drove to the grocery story for Mrs. Nash and herself. On the day of the accident Mrs. Reed was unable to stop the vehicle and was injured. The brakes were defective. This fact was not disclosed to Mrs. Reed.

The Supreme Court of Appeals of Virginia had before it the case of *Clark v. Parker,* 161 Va. 480, 171 S.E. 600, a case in some respects similar to the one now before us. The defendant, owner of the vehicle, permitted the plaintiff to drive. A collision occurred as a result of defective brakes. In the opinion the court said: "But this was a North Carolina accident, and in that State there are no degrees of negligence . . . It follows that ordinary negligence will support a recovery. It is, however, still necessary that the owner knew or should have known that it was unsafe to drive his car."

The case of *Honeycutt v. Bryan,* 240 N.C. 238, 81 S.E. 2d 653, stated the general rule: "He who puts a thing in charge of another which he knows, or in the exercise of ordinary prudence he should have known, to be dangerous, or to possess characteristics which, in the ordinary course of events, are likely to produce injury, owes a duty to such person to give reasonable warning or notice of such defects." See 61 A.L.R. 1336, *et seq;* 46 A.L.R. 2d 404, *et seq.*

"Direct evidence of negligence is not required, but the same may be inferred from acts and attendant circumstances, and . . . if the facts proved establish the more reasonable probability that the defendant was guilty of actionable negligence, the case cannot be withdrawn from the jury, . . ." *Frazier v. Gas Co.,* 247 N.C. 256, 100 S.E. 2d 501; *Peterson v. Tidewater Power Co.,* 183 N.C. 243, 111 S.E. 8; *Fitzgerald v. R. R.,* 141 N.C. 530, 54 S.E. 391.

We express no opinion as to what, if anything, the evidence proves. All the Court decides is that the evidence in the light most favorable to the plaintiff presents an issue of fact for the jury rather than a question of law for the court. The judgment of nonsuit is

Reversed.