HUGH WILCOX v. GLOVER MOTORS, INC., AND DORAN KENT ANDERS
AND
JUANITA WILSON v. GLOVER MOTORS, INC., AND DORAN KENT ANDERS.

(Filed 1 March, 1967.)

**1. Trial § 11—**

While counsel are entitled to argue both the law and the facts to the jury and, to this end, in proper instances, may read a decision of the Supreme Court stating the applicable law and recounting some of the facts which the court had before it when it pronounced the rule in question, it is improper argument for counsel to read the facts in prior decisions and state that the fact situations in those cases were the same as those in the case at trial and that therefore the prior decisions impel a like conclusion.

**2. Same—**

It is not sufficient, upon objection to improper argument of counsel, for the court merely to stop the argument without instructing the jury not to consider it, either at the time or in the court's charge to the jury.

**3. Automobiles § 54f—**

Admission of ownership of the vehicle involved in the collision requires the submission to the jury of the question of liability under the doctrine of *respondeat superior,* but where all of the evidence discloses that the driver was a prospective purchaser from an automobile dealer and that he was driving the vehicle without any representative of the motor company with him, the court may give peremptory instructions that the jury answer the issue of agency in the negative if they found the facts to be as all of the evidence tended to show, otherwise to answer the issue in the affirmative. G.S. 20-71.1.

**4. Appeal and Error § 54—**

Where the court instructs the jury to answer a subsequent issue in the negative if it answers a prior issue in the negative, and error is found in the trial of the prior issue, a new trial must be awarded on the second issue also in order that there may be a proper determination of the second issue by the jury upon the applicable law in accordance with instructions of the court.

**5. Automobiles § 52—**

When a dealer permits a prospective purchaser to take a car and drive it for the purpose of trying it out to determine whether he wishes to buy it, no representative of the dealer accompanying the driver, the relationship between the dealer and the prospective purchaser is that of a bailor and bailee for the mutual benefit of the parties.

**6. Same—**

Liability of the owner of an automobile in knowingly permitting a person to drive the vehicle upon the highway with defective brakes, which proximately causes injury, attaches independently of agency.

**7. Same; Automobiles § 21—**

The requirement of G.S. 20-124 that a vehicle operated upon a public highway should be equipped with adequate brakes applies to both the owner and the driver of the vehicle, but the statute does not constitute either an insurer, and before either may be held liable for a collision resulting from defective brakes the plaintiff must introduce evidence that the owner or driver knew of such defect or was negligent in failing to discover it, and when plaintiff introduces no evidence of knowledge, express or implied, the issue of negligence in this regard need not be submitted to the jury.

APPEALS by plaintiffs from *Latham, S.J.,* at the 29 August 1966 Civil Session of BUNCOMBE.

These are suits for damages arising out of a three car collision upon an overpass bridge on U. S. Highway 25A south of Asheville. A station wagon in which the plaintiff Wilcox was riding as a passenger entered the bridge from the south. The plaintiff Wilson, driving an automobile owned by her, entered the bridge from the north. The defendant Anders, driving an automobile owned by the defendant Glover Motors, Inc., entered the bridge from the north, behind the Wilson car. In an attempt to pass the Wilson car, Anders collided first with the station wagon and then with the Wilson car. In the collision both plaintiffs suffered personal injuries and the Wilson automobile was damaged. The suits were consolidated for trial.

The pleadings are substantially identical in the two actions. The plaintiffs allege that Glover Motors, Inc., hereinafter called Glover, a dealer in new and used automobiles, permitted Anders to drive its vehicle, a used car, in an effort to sell it to him, though it knew, or

should have known, that the automobile had defective brakes. The plaintiffs allege that Anders was negligent in his operation of the vehicle in several respects, including failure to keep a lookout, excessive speed, improper passing, and operating the automobile without adequate brakes or failing to apply its brakes. Each complaint further alleges that Anders was operating the automobile as an agent of Glover and in furtherance of the business of Glover. The answer of Anders admits the allegation of agency, that of Glover denies it. Both defendants deny all allegations of negligence by either of them.

Evidence offered by the plaintiffs tended to show:

Miss Wilson drove her automobile upon the bridge from the north. From that direction the highway approaches the bridge on a curve and upgrade. As she approached the bridge, a traffic light at an intersection immediately south of the bridge was visible to her. It was red, several vehicles being stopped between her and the light. For this reason she slowed down. Suddenly, lights flashed into her rear view mirror and immediately thereafter the Glover car, driven by Anders, was at her left side. It collided with the station wagon, which was headed north, and with the Wilson car. The speed of the Wilson car upon the bridge was between 10 and 15 miles per hour. As the Anders car came up behind Miss Wilson, she heard it "drop into a lower gear."

The station wagon, headed north, stopped for the traffic light and, when it turned green, proceeded through the intersection and onto the bridge. When the station wagon entered the bridge, the Wilson car was on it, three or four car lengths from the station wagon. The Glover car, driven by Anders, was then overtaking the Wilson car and about seven car lengths behind it. It was dark and only the two sets of headlights were visible to Wilcox, who was in the front seat of the station wagon. He estimated the speed of the Glover car, driven by Anders, at 40 miles per hour. When about two car lengths behind the Wilson car, Anders pulled out to his left to pass. Wilcox was of the opinion, from the sound of the motor, that Anders then shifted to a lower gear. The collision was almost instantly thereafter.

Wilcox testified that Anders told the investigating patrolman that his brakes had failed and that he had noticed some difficulty with the brake pedal earlier. Both the patrolman, who was called as a witness for the plaintiffs, and Anders, who testified in his own behalf, denied that Anders made any statement to the patrolman indicating earlier trouble with his brakes, each testifying that the statement was merely that the brakes had failed at the time of the accident.

The investigating patrolman examined the brake pedal on the Glover vehicle, driven by Anders, and found there was no resistance. At that time, one of the wheels had collapsed and he observed a fluid on the wheel and on the brake cylinder and the ground around the wheel.

The speed limit was 35 miles per hour beginning at a point 1,000 feet north of the bridge, and 25 miles per hour beginning at a point 150 feet north of it. There were double yellow center lines beginning 200 feet north of the bridge and continuing upon it. Anders told the patrolman that he was driving about 35 miles per hour, that, as he approached the Wilson car, he applied his brakes and, when they failed, he went to his left to avoid the Wilson car.

The evidence offered by Glover was to the effect that Anders, a prospective purchaser of the automobile, came to Glover's place of business about closing time to look at the car. With the permission of Glover's manager, Anders took the car to keep it overnight and to try it out.

The testimony of Anders was to the effect that he went to Glover's, looked at the automobile, inquired as to its price and mechanical condition, and took it out to drive it during the evening and return it the next day. He drove about the area for some miles, stopping on numerous occasions for traffic lights and other reasons. He noticed nothing wrong with the brakes before reaching the scene of the collision. As he approached the bridge, he observed the cars in front of him stopping so he cut off the gas and attempted to apply the brakes. His speed was then 35 miles per hour. The brake pedal went completely to the floor. Anders tried pumping the pedal, without results. He was then on the bridge. He put the car into a lower gear to reduce its speed. He did not apply the "emergency" or "parking" brake. The brake lights of the Wilson car were on. In order to avoid colliding with it, he went to his left. The station wagon then came onto the bridge from the opposite end, and he collided with it before he could complete the passing of the Wilson car. Anders' speed at the time of the impact was between 10 and 20 miles per hour.

Mrs. Brank, Anders' passenger, testified that as they approached the bridge and could see the red traffic light on the other side of it and the cars beginning to stop for it, Anders took his foot off the accelerator and, all of a sudden, told her there were no brakes and for her to get down. She saw him frantically pushing down the brake pedal, and then working with the gears. He swerved just before reaching the Wilson car.

The court submitted the following issues to the jury in each case:

1. Was the plaintiff injured by the negligence of the defendant Doran Anders, as alleged in the complaint?

2. Was the defendant Doran Anders operating the 1963 Plymouth automobile owned by the defendant Glover Motors, Inc., at the times herein complained of as an agent of the defendant Glover Motors?

3. Was the plaintiff injured by the negligence of the defendant Glover Motors, as alleged in the complaint?

4. What amount, if anything, is the plaintiff entitled to recover?

The court instructed the jury that if it answered the first issue "No," it would not answer any of the other issues. The jury did answer the first issue "No," and did not answer any of the other issues. Judgment was entered upon the verdict in favor of the defendants. Both plaintiffs appealed.

*Robinson & Randle; Parker, McGuire & Baley for plaintiff appellant Wilcox.*

*John C. Cheesborough and G. Edison Hill for plaintiff appellant Wilson.*

*Van Winkle, Walton, Buck and Wall by O. E. Starnes, Jr., for defendant appellees.*

*Lee and Allen by H. Kenneth Lee for defendant appellees.*

LAKE, J. The principal contention of the defendants, with reference to the issue of negligence by Anders, was that Anders was faced with a sudden emergency due to the failure of the brakes on the Glover car which he was driving. The plaintiffs assign as error portions of the charge to the jury with reference to the doctrine of sudden emergency. We find in these instructions, when read in context, no error prejudicial to the plaintiffs.

In his argument to the jury upon this issue, one of the trial counsel for Anders (not his counsel in this Court) read to the jury excerpts from the published opinions of this Court in *Crowe v. Crowe,* 259 N.C. 55, 129 S.E. 2d 585; *Stephens v. Oil Co.,* 259 N.C. 456, 131 S.E. 2d 39; and *Hudson v. Drive It Yourself,* 236 N.C. 503, 73 S.E. 2d 4. In those cases, this Court, applying the doctrine of sudden emergency to the facts there recited, affirmed a judgment of nonsuit in the first case, granted the defendant a new trial in the second, and reversed the denial of a motion for nonsuit in the third.

Counsel introduced this portion of his argument with the statement, "The fact situation in these cases is the same as in Mr. Anders' case." He concluded this portion of his argument by say-

ing, "I say to you that the facts in this case are the same as the facts in the case I have just read [*Hudson v. Drive It Yourself, supra*], and that the defendant Anders is no more liable here than the defendants in the other cases."

The portions of the opinions in the *Crowe* and *Hudson* cases, *supra*, so read to the jury, contained summaries of the facts shown by the records in those cases. Counsel's reading from the opinion in the *Crowe* case, *supra*, closed with this quotation therefrom: "Plaintiff's evidence, considered in the light most favorable to him, and giving to him the benefit of every legitimate inference to be drawn therefrom, fails to show any negligence on defendant's part which was a proximate cause of his injuries." Counsel's reading from the opinion in the *Hudson* case, *supra*, that being a case of a sudden brake failure, closed with this quotation therefrom: "We reach the conclusion that the evidence offered was insufficient to show a negligent breach of duty on the part of the defendant, and that the motion for judgment of nonsuit should have been allowed."

During this portion of the argument, the plaintiffs objected on the ground that counsel for Anders was reading to the jury the facts in these other cases. The record shows no ruling by the trial judge upon this objection. Plaintiffs' briefs, however, state that upon their objection the judge stopped this argument, but did not instruct the jury to disregard it. There is no reference to this argument in the charge of the court to the jury. There is nothing in the charge bearing upon the matter, except the court's general statement that the jury was not to take the law from counsel but from the court and was to apply it to the facts as the jury found the facts to be from all the evidence.

This was not proper argument. It was highly prejudicial to the plaintiffs. The trial judge should have promptly sustained the objection, directed counsel to desist from so comparing the facts of the reported cases with the one on trial and instructed the jury to disregard this portion of counsel's argument, or he should have so instructed the jury in his charge so specifically as to leave no doubt in the minds of the jurors that such excerpts from the former decisions of this Court were not to be considered by them in determining whether or not these plaintiffs were injured by the negligence of Anders. *State v. Smallwood*, 78 N.C. 560; 88 C.J.S., Trial, § 200. It is not sufficient merely to stop such an argument without an appropriate direction to the jury.

In McIntosh, North Carolina Practice and Procedure, 2d ed., § 1492, with reference to the procedure for correcting and removing the effects of improper argument, it is said:

"The Court may correct the impropriety by at once check-
ing the argument and restricting it within proper bounds, or he
may correct it in his charge to the jury, or if a favorable ver-
dict is given he may set aside the verdict and grant a new trial.
It is difficult to lay down the line, further than to say that it
must ordinarily be left to the discretion of the judge who tries
the case; and the Court will not review his discretion, unless it
is apparent that the impropriety of counsel was gross and well
calculated to prejudice the jury."

Since, in the present instance, the trial judge did not correct the
impropriety by any of these methods, it is necessary for us to do
so by granting a new trial.

G.S. 84-14 provides, "In jury trials the whole case as well of
law as of fact may be argued to the jury." It is well settled that this
statute permits counsel, in his argument to the jury, to state his
view of the law applicable to the case on trial and to read, in sup-
port thereof, from the published reports of decisions of this Court.
*Brown v. Vestal,* 231 N.C. 56, 55 S.E. 2d 797; *Howard v. Telegraph
Co.,* 170 N.C. 495, 87 S.E. 313. It is often necessary for counsel
to do so in order that the jury may understand the issue to which
counsel's argument on the evidence is addressed.

In order to make meaningful a statement of a rule of law found
in a reported decision, it is sometimes necessary to recount some of
the facts which the court had before it when it pronounced the rule
in question. For this purpose, counsel, in his argument in a subse-
quent case, may not only read the rule of law stated in the published
opinion in the former case but may also state the facts before the
court therein. *Cashwell v. Bottling Works,* 174 N.C. 324, 93 S.E.
901; *Harrington v. Wadesboro,* 153 N.C. 437, 69 S.E. 399. Counsel's
freedom of argument should not be impaired without good reason,
but where both the impropriety and the prejudicial effect are clear,
the court should act.

It is not permissible argument for counsel to read, or otherwise
state, the facts of another case, together with the decision therein,
as premises leading to the conclusion that the jury should return a
verdict favorable to his client in the case on trial. That is, counsel
may not properly argue: The facts in the reported case were thus
and so; in that case the decision was that there was no negligence
(or was negligence); the facts in the present case are the same or
stronger; therefore, the verdict in this case should be the same as
the decision there. *Forbes v. Harrison,* 181 N.C. 461, 107 S.E. 447;
*State v. Corpening,* 157 N.C. 621, 73 S.E. 214; 53 Am. Jur., Trial,
§ 493; 88 C.J.S., Trial, § 171. This is but an application of the rule

that, in his argument to the jury, counsel may not go outside the record and inject into his argument facts of his own knowledge, or other facts not included in the evidence. See *Hamilton v. Henry,* 239 N.C. 664, 80 S.E. 2d 485. The ultimate test is whether the reading from the reported case "would reasonably tend to prejudice either party upon the facts" of the case on trial. See: *Conn v. R. R.,* 201 N.C. 157, 159 S.E. 331, 77 A.L.R. 641; *Forbes v. Harrison, supra.* An examination of passages read to the jury by counsel in his argument in the present case compels the conclusion that the reading of them could contribute little, if anything, to the jury's understanding of the doctrine of sudden emergency in the law of negligence. These passages do not meet the test of permissibility. We do not imply any criticism of those decisions or any statement therein.

It is alleged in the complaint in each case now before us that Glover was the owner of the automobile operated by Anders. This is admitted by the answer of each defendant in each case. By reason of G.S. 20-71.1, these admissions in the pleadings are sufficient to take the case to the jury for its determination upon the issue of whether Anders, at the time of the collision, was driving this vehicle as the employee or agent of Glover and in the course of such employment. *Whiteside v. McCarson,* 250 N.C. 673, 110 S.E. 2d 295; *Johnson v. Thompson,* 250 N.C. 665, 110 S.E. 2d 306; *Travis v. Duckworth,* 237 N.C. 471, 75 S.E. 2d 309. Consequently, though there was no other evidence of agency, *Wells v. Clayton,* 236 N.C. 102, 72 S.E. 2d 16, it was necessary for the court to submit to the jury, as it did, in each case, the issue, "Was the defendant Doran Anders operating the 1963 Plymouth automobile owned by the defendant Glover Motors, Inc., at the time herein complained of as an agent of the defendant Glover Motors?"

The court instructed the jury:

> "[I]f you find these to be the facts, that is that Anders had the car in order to try it out in anticipation of a purchase, that there was no agent of the defendant Glover Motor Company with him at the time of the accident, then the Court charges you as a matter of law that the relationship between Anders and Glover Motor Company was that of bailor and bailee, and not that of principal and agent, and it would be your duty to answer this issue NO; otherwise, you would answer this issue YES."

That instruction was proper, there being no evidence of agency other than that which was supplied by G.S. 20-71.1 and the above mentioned admissions in the pleadings. *Chappell v. Dean,* 258 N.C. 412, 128 S.E. 2d 830.

The jury, however, did not answer the issue as to the agency of Anders for Glover, having been instructed not to do so if it answered the issue as to Anders' negligence in the negative, as it did. Since the cases must go back for a new trial because of the improper argument of counsel upon the issue of whether the plaintiffs were injured by the negligence of Anders, and since it has not been determined whether Glover would be liable for such injury on the principle of *respondeat superior,* the cases must also go back for new trials as to the defendant Glover.

The third issue submitted to the jury was, "Was the plaintiff injured by the negligence of the defendant Glover Motors, as alleged in the complaint?" The court instructed the jury that it would answer this issue, if it came thereto, in the same way that it answered issue No. 2 relating to the agency of Anders for Glover. Thus, the court excluded from consideration by the jury the contention of the plaintiffs that Glover, itself, was negligent, independent of any negligence by Anders, in that Glover permitted Anders to drive its automobile when Glover knew, or in the exercise of reasonable care should have known, that the brakes on the automobile were defective. Although the jury did not come to and so did not answer this issue, it appears probable that upon the further trial of these actions the question will again arise as to whether the alleged independent negligence by Glover should be excluded from the jury's consideration upon the third issue. Consequently, we deem it advisable to examine the correctness of this ruling upon the evidence contained in the present record.

When a prospective purchaser of an automobile is permitted by the dealer to take the car and drive it for the purpose of trying it out to determine whether he wishes to buy it, no representative of the dealer accompanying him, the relationship between the dealer and the prospective purchaser is that of bailor and bailee. The bailment is one for the mutual benefit of the parties.

G.S. 20-124 provides that every motor vehicle "when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop such vehicle * * * and such brakes shall be maintained in good working order." The purpose of this statute is to protect from injury all persons using the highway, both occupants of the vehicle in question and others. With reference to this statute, Rodman, J., speaking for the Court, in *Stephens v. Oil Co., supra,* said:

> "Notwithstanding this mandatory language, the statute must be given a reasonable interpretation to promote its intended purpose. The Legislature did not intend to make operators of

motor vehicles insurers of the adequacy of their brakes. The operator must act with care and diligence to see that his brakes meet the standard prescribed by statute; but if because of some latent defect, unknown to the operator, and not reasonably discoverable upon proper inspection, he is not able to control the movement of his car, he is not negligent, and for that reason not liable for injuries directly resulting from such loss of control."

The duty imposed by this statute rests both upon the owner and upon the driver of the vehicle, though knowledge of a defect, or negligence in failing to discover it, on the part of the one would not necessarily be imputed to the other. A bailor who knows, or by a reasonable inspection of his vehicle should know, that its brakes are defective and unsafe, is negligent in permitting that vehicle to be taken from his premises and driven upon the highway by a bailee and may be held liable in damages to a third person injured by the operation of such vehicle, if such defect in its brakes is the proximate cause of such injury. *Hudson v. Drive It Yourself, Inc., supra.* See also *Austin v. Austin,* 252 N.C. 283, 113 S.E. 2d 553.

The bailor, even though a dealer in second hand automobiles and engaged in the repair of automobiles, is not an insurer of the brakes upon a vehicle held by him for sale and delivered by him to a prospective customer for a trial drive upon the highway. *Hudson v. Drive It Yourself, Inc.,. supra; Stephens v. Oil Co., supra.* The burden is upon the plaintiff to prove that the bailor, at the time he allowed the vehicle to leave his possession for such purpose, knew, or in the exercise of reasonable care in the inspection of the vehicle should have known, that the brakes were defective. In the record now before us there is no evidence of such negligence by Glover. The doctrine of *res ipsa loquitur* does not apply to a brake failure several hours and many miles after delivery of the car to the bailee. See *Hudson v. Drive It Yourself, Inc., supra.* In the absence of such evidence, it was not error to refuse to submit to the jury an issue as to negligence by Glover, separate and apart from negligence by Anders, its alleged agent. *Wells v. Clayton, supra,* at page 105. That is, there was no error in the instruction limiting the jury's consideration upon the third issue to the question of Glover's liability upon the basis of *respondeat superior.*

*Wilcox v. Glover Motors, Inc., et al:* New trial.

*Wilson v. Glover Motors, Inc., et al:* New trial.