## GUY P. HONEYCUTT v. D. L. BRYAN.

(Filed 5 May, 1954.)

**1. Negligence § 1—**

Where the circumstances in which a person is placed are such that a man of ordinary sense using his faculties will recognize that his failure to use ordinary care and skill in his own conduct with regard to those circumstances will cause danger of injury to the person or property of another, such person is under duty to use ordinary care and skill to avoid such danger.

**2. Same—**

He who puts a thing in charge of another which he knows, or in the exercise of ordinary prudence should know, to be dangerous, or to possess characteristics which, in the ordinary course of events, are likely to produce injury, owes a duty to such person to give reasonable warning or notice of such danger.

**3. Same—**

Negligence is the failure to exercise ordinary care in performance of some legal duty which the defendant owes plaintiff under the circumstances in which they are placed.

**4. Carriers § 8—**

A franchise motor carrier of goods by contract in intrastate commerce, operating as both initial and delivering carrier, owes the duty to the employees of the consignee to exercise reasonable care to furnish a vehicle in reasonably safe condition so that the employees of the consignee can unload the trailer with reasonable safety, and the duty to make reasonable and timely inspection of the vehicle to ascertain whether it is reasonably safe for unloading, and to repair or give warning of any dangerous condition in the trailer discoverable by such inspection.

**5. Same—Evidence held sufficient for jury on issue of negligence of motor carrier in failing to use due care to provide vehicle reasonably safe for unloading and in failing to warn of danger.**

Plaintiff's evidence tended to show that defendant, a contract carrier, delivered a load of steel beams and columns to the consignee, that he parked the trailer truck as directed by the consignee's employees on a twelve per cent slope to the left and approximately a seven per cent slope

from the front to the rear, that he removed the binder chains so that there was nothing to keep the beams, slippery and wet from rain, from sliding off except three 1½ inch pieces of pipe used as standards on the left side of the trailer, that in unloading the beams with a wrecker bar, an employee of the consignee asked defendant carrier if it was safe for him to walk up on the beams on the truck, and that as he did so upon the assent of defendant, one of the standards bent, and the beams began sliding off the truck to the left, resulting in serious injury to the consignee's employee. *Held:* The evidence is sufficient to be submitted to the jury on the issue of the carrier's breach of duty to exercise reasonable care to provide a vehicle reasonably safe for unloading, and in failing to warn the consignee's employee of the danger due to the position and slant of the vehicle and the removal of the binder chains.

APPEAL by defendant from *Whitmire, Special J.,* December Extra Term 1953, MECKLENBURG.

Civil action to recover compensation for personal injuries.

Defendant is a contract carrier of merchandise operating under a franchise granted him by the Utilities Commission. Herman Sipe Company, hereinafter referred to as Sipe, is a building contractor; and plaintiff, at the time he received his injuries, was one of its employees.

Defendant's vehicle is the tractor-trailer type. The trailer is flat bottomed, about thirty feet long, and its over-all width is eight feet. There is a band of steel about four inches wide and one-fourth inch thick on the sides of the trailer. To this band there are welded on each side ten brackets, about one and one-half by four inches in size, for the purpose of holding standards or stanchions.

On 16 February 1952 the defendant transported a full load of building material from Charlotte to the site of a building then being erected in Morganton by Sipe. The shipment consisted of nineteen I-shaped steel beams, twenty feet long and twenty-one inches wide, weighing approximately 1237 pounds each, and some steel columns. The beams were loaded to the front of the trailer and the columns to the rear. There were three standards on the left side of the truck opposite the beams—one near each end of the beams and one in the middle. They were pieces of pipe, and the middle one was smaller than the others. The end ones were about one and one-half inches in diameter. There were two on each side for the columns.

Before leaving Charlotte, defendant securely tied down the beams and columns by the use of chains which were tightened so as to leave clearance between the beams and standards and prevent any shifting of the load while in transit.

When defendant arrived at the site of the building under construction, he placed his tractor as directed by Sipe's foreman. This put the tractor-trailer on a slight decline to the left and rear. Having parked the vehicle

as directed, the defendant then removed the binder chains and the standards on the right side. Sipe's employees unloaded the columns. Plaintiff then asked the defendant how was the best way to go about unloading the beams, and defendant replied: "Take a bar and rutch them out to the edge."

Plaintiff and his fellow employee, by using a wrecker bar, pushed the end of a beam over the edge of the truck, and gravity caused it to fall to the ground. They proceeded to unload in this manner until the front end of the fourth beam hooked to some part of the trailer and did not fall. Plaintiff asked defendant if it was safe for him to walk up the beams to the front "to get that one loose," and defendant told him it was safe. Plaintiff then took an iron bar, got on the truck, and started up the beams to the front. As soon as he got on the beams, the rear standard bent and the beams began sliding off the truck on the left side. The steel band holding the other two standards on that side tore loose from the truck. Plaintiff "just rode the steel on off." He suffered certain injuries including the loss of a major portion of one hand.

Defendant testified that plaintiff was on the beams, attempting to pry off the one that was caught at the time the beams began to fall off the left side. He also testified that when he needed standards he usually got them off the scrap heap; that he sometimes helped unload, but that he did not do so on this occasion; and that he did not use more standards because he used the brackets for chains.

There was testimony tending to show that when the shipment is a carload or truckload, it is the duty of the consignee to unload, and the judge so charged the jury.

The customary issues, including an issue of contributory negligence, were submitted to and answered by the jury in favor of the plaintiff. The court entered judgment on the verdict and defendant appealed.

*G. T. Carswell and Robinson & Jones for plaintiff appellee.*
*Jones & Small for defendant appellant.*

BARNHILL, C. J. This case has no counterpart in our books. Our research has not disclosed one substantially on all fours in any other jurisdiction. Yet it presents no complex or insolvable question for decision. We are only required to apply old law to a new combination of facts.

Whenever one person is by circumstances placed in such a position towards another that anyone of ordinary sense who thinks will at once recognize that if he does not use ordinary care and skill in his own conduct with regard to those circumstances, he will cause danger of injury to the person or property of the other, duty arises to use ordinary care

and skill to avoid such danger. *Stroud v. Transportation Co.,* 215 N.C. 726, 3 S.E. 2d 297.

He who puts a thing in charge of another which he knows, or in the exercise of ordinary prudence he should have known, to be dangerous, or to possess characteristics which, in the ordinary course of events, are likely to produce injury, owes a duty to such person to give reasonable warning or notice of such danger. *Stroud v. Transportation Co., supra.*

Negligence is a want of due care—a failure to exercise ordinary care in the performance of some legal duty which the defendant owed the plaintiff under the circumstances in which they are placed at the time.

But these are nothing more than general, abstract statements of the law of negligence. We must relate that law to the particular facts and circumstances, and the relation of the parties one to the other, at the time plaintiff was injured. *Holderfield v. Trucking Co.,* 232 N.C. 623, 61 S.E. 2d 904.

The defendant, a contract carrier of freight, transported a truckload of steel beams and columns to Sipe, the consignee. He placed the tractor and trailer as directed by employees of Sipe, removed the "binder" chains and the standards on the right side of the trailer, and then turned the vehicle over to Sipe's employees for unloading. In so doing, did he owe plaintiff and his coemployees any duty, and if so, did he breach that duty? These are the real questions presented for decision, and decision must be made on the facts and circumstances which arose after the vehicle reached its destination.

We have recently discussed the duties a common carrier of freight by rail owes the employees of the consignee when the shipment is to be unloaded by the consignee. *Yandell v. Fireproofing Corp.,* 239 N.C. 1. While the facts in that case are not the same as those appearing in this record, the two cases, in principle, are on all fours and invoke the application of the same rules of law. There the defendants were carriers of freight by rail—here by motor vehicle. There the boxcar—here the trailer—when delivered to the consignee, was in such defective condition that an employee of the consignee, while engaged in unloading, received personal injuries as a result thereof. Hence we cannot perceive any sound reason why we should not say that the law, as stated in that case, is not controlling here.

*Ervin, J.,* speaking for the Court in the *Yandell case,* says:

"An initial carrier by rail, which furnishes a car for moving freight, owes to the employees of the consignee, who are required to unload the car, the legal duty to exercise reasonable care to supply a car in reasonably safe condition, so that the employees of the consignee can unload the same with reasonable safety. (Numerous cases cited.) A delivering carrier by rail, which delivers to the consignee for unloading a car re-

ceived by it from a connecting carrier, owes to the employees of the consignee, who are required to unload the car, the legal duty to make a reasonable inspection of the car to ascertain whether it is reasonably safe for unloading, and to repair or give warning of any dangerous condition in the car discoverable by such an inspection. (Numerous cases cited.)" Since the defendant was both the initial and delivering carrier, he owed to Sipe's employees the duty (1) to exercise reasonable care to furnish a vehicle in reasonably safe condition so that the employees of Sipe could unload the trailer with reasonable safety, and (2) to make a reasonable and timely inspection of the vehicle to ascertain whether it was reasonably safe for unloading, and to repair or give warning of any dangerous condition in the trailer discoverable by such inspection.

The court below, during the trial and in its charge to the jury, was very careful to limit the alleged liability of the defendant to a breach of these duties. In so doing, it adhered, with commendable accuracy and detail, to the requirements of G.S. 1-180. It charged the jury in part as follows:

"Now in this case the court charges you that when a common carrier of freight delivers an entire load of merchandise, or, in this case, building materials, steel beams, to the consignee, the law imposes the duty upon the consignee to unload that trailer, in the absence of some agreement to the contrary. That being true, the law charges the carrier with the duty of anticipating the presence of the consignee or his employees on or about or upon the trailer for the purpose of unloading it, and that being true, the law imposes the duty upon the carrier, that is, the defendant, in this case, to see, in the exercise of reasonable care or due care, that the trailer is in a reasonably safe condition for unloading purposes. That does not mean that the carrier becomes or is a guarantor of the absolute safety of the consignee or his employees, but it simply means that he is required, in the exercise of due care, to see that the truck or the trailer is in a reasonably safe condition, safe condition meaning not only the truck itself but the way it is placed and loaded and so forth."

"Now on the first issue the court charges you that if you find from this evidence and by its greater weight that when the defendant placed the truck in the position for unloading, that the standards put there for the purpose of holding the beams in place were not properly or securely fixed to the side of the bed, the bed of the truck, or that they were not sufficient in number, and that for that reason the truck was not in a reasonably safe condition for unloading purposes, and if you further find by the greater weight of the evidence that the defendant knew or could have known from a reasonable inspection that the truck was not in a reasonably safe condition, and if you further find that by the greater weight of the evidence that the defendant failed to warn the plaintiff of the danger of being upon

the truck or the beams, because of its unsafe condition, and if you further find that the plaintiff, as an employee of the consignee, got upon the trailer for the purpose of unloading it . . . and that while he was on the truck and on the beams for the purpose of unloading, that the standards gave way or broke off and, because of that, the steel beams remaining on the truck shifted and fell off on the lower side and to the ground, resulting in injury to the plaintiff, then the court charges you that the defendant would be guilty of negligence, and if you further find by the greater weight of the evidence that such negligence was the proximate cause of the plaintiff's injury, or one of the proximate causes of the plaintiff's injury, that it would be your duty to answer the first issue yes . . ."

The record contains ample competent evidence tending to show that defendant breached this duty imposed on him under the circumstances here disclosed.

It is true he parked the trailer as directed by Sipe's employees. Yet in so doing, he knew when he surrendered custody of the vehicle to them for the purpose of unloading that the vehicle was parked "on a little bit of a slant" to the left—a twelve per cent slope to the left and approximately seven per cent from the front to the rear; that the beams were piled five high; that it was raining, rendering the beams and supports slippery; that he had removed the binder chains; and that there was nothing to keep the beams from sliding off on the left except three one and one-half inch pieces of pipe. Although he had considered it necessary to stop and inspect his load twice while in transit to discover whether there had been any shift of the beams then tied down by the binder chains, he did not look, at the scene of the accident, to see whether there was any space between the beams and the standards on the left or use any of the additional five standards then available for use on the left. He made no inspection and gave no warning that due to the position of the vehicle and the removal of the chains the beams might slide to the left or that the three pipe standards were insufficient to hold the weight of the beams if that should occur. Instead of warning of the danger, when asked, he assured plaintiff it was safe for him to get on top of the beams.

These and the other facts and circumstances appearing of record were sufficient to repel the motion to dismiss the action as in case of nonsuit.

We have carefully examined the other exceptive assignments of error. While some of them may point out technical error of little significance, none are of sufficient merit to require discussion. The cause was carefully tried, and the charge was as favorable to defendant as he had any reasonable cause to expect. He has had his day in court in a trial free from any error that might have affected the verdict of the jury. He must, therefore, abide the results.

Affirmed.