QUAIL HOLLOW EAST CONDOMINIUM ASSOCIATION, PLAINTIFF, v. DONALD J. SCHOLZ COMPANY and HAROLD COOLER, DEFENDANTS, AND HAROLD COOLER, THIRD PARTY PLAINTIFF v. INDOOR COMFORT OF RALEIGH, INC., A CORPORATION, AND HOLLAND CONSTRUCTION COMPANY, INC., A CORPORATION, THIRD PARTY DEFENDANTS AND HAROLD COOLER, THIRD PARTY PLAINTIFF, v. REA BROTHERS, INC., ADDITIONAL THIRD PARTY DEFENDANTS

No. 7926SC558

(Filed 15 July 1980)

1. **Architects § 3; Contracts § 15; Negligence § 2– condominium owners – action against architect – negligent design and supervision**

    An association of condominium owners could properly maintain an action against an architect for the negligent design and preparation of plans and specifications and the negligent supervision of construction of the condominium complex although no contractual privity existed between the architect and the association of condominium owners.

2. **Architects § 3; Limitation of Actions § 4.2; Rules of Civil Procedure § 15– action against architect – statute of limitations – amendment of complaint – relation back to time of original complaint**

    Where defects in an underground water pipe system serving a condominium complex were discovered for the first time on or about 9 October 1974, an action instituted on 13 June 1977 against defendant architect for negligent supervision of the installation of the system was brought within the three-year statute of limitations of G.S. 1-52(5) and within the six year outer limit of G.S. 1-50(5). Furthermore, an amendment of plaintiffs' complaint filed on 1 February 1979 alleging defendant's negligent design of the water pipe system related back to the date of the original complaint pursuant to G.S. 1A-1, Rule 15(c) and was therefore not barred by the statute of limitations, since the original complaint gave defendant notice of the transactions or occurrences to be proved pursuant to the amendment.

3. **Architects § 3– condominium owners – action against architect – genuine issue of material fact**

    In an action brought by an association of condominium owners against defendant architect for negligent design and supervision of installation of an underground water pipe system for the condominium complex, the evidence on motion for summary judgment presented questions of fact as to the duties arising between the parties where plaintiff's materials tended to show that defendant drew the plans for the piping system; defendant had the authority to interrupt the construction process so that design and construction errors could be remedied; defendant knew or should have known that the piping system would deteriorate if proper methods of sealing the pipes were not followed; defendant knew at the time of construction that certain prescribed methods of construction were not being followed; and defendant did not exercise his authority to prevent or correct the problems

that appeared on the construction site; and where defendant denied such assertions by plaintiffs and asserted that he was never obligated by contract or otherwise to oversee the construction in a supervisory capacity and that the plans and specifications drawn and approved by him were in all respects proper.

APPEAL by plaintiff from *McConnell, Judge.* Judgment entered 12 February 1979 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 16 January 1980.

Plaintiff, Quail Hollow East Condominium Association (Condominium Association), commenced this action, pursuant to G.S. 47A-26, seeking damages for economic injury allegedly resulting from the substandard condition of the underground water pipe system serving the condominium complex. In its complaint, plaintiff Condominium Association alleged that defendant Harold Cooler, an architect, entered into a contract in 1971 with defendant Donald J. Scholz Company (Scholz), a general contracting firm, "to prepare plans and specifications" for the construction of Quail Hollow East Condominiums in Charlotte, North Carolina, and "to supervise and administer the construction of the condominiums." Plaintiff further alleged that Cooler filed his plans with the Register of Deeds of Mecklenburg County, thus representing that construction would be in accordance with those plans. Plaintiff alleged that certain underground hot and cold water pipes had deteriorated since their installation, causing leaks and necessitating extensive repairs. In an amendment to its complaint, plaintiff alleged that the "deterioration and the resulting damage was caused by failure to comply with the building code, failure to comply with the plans and specifications, failure to properly install, and failure to properly test said piping system." According to plaintiff, defendant Cooler "was negligent in that he failed to properly supervise and inspect the construction of the premises, thus allowing substandard water piping to be installed throughout the complex." Plaintiff alleged that Cooler knew that the purchasers of the condominiums were relying on his expertise and his representations as to the plans and specifications, and that he knew plaintiff would ultimately be responsible for maintenance and upkeep of the water system and other common areas. Plaintiff prayed for recovery of $150,000, the

cost of replacement of the underground piping system. Plaintiff subsequently amended its complaint to reflect a demand of $230,000.

Plaintiff alleged a separate cause of action for fraud and deceit and false representation in the procurement of purchase agreements entered into by its members. This count, however, was subsequently abandoned and is not relevant to this appeal.

Defendant Cooler answered, averring that plaintiff's complaint fails to state a claim upon which relief can be granted, and that he never had any contract with, or any obligation to, plaintiff or any members of the Condominium Association. Defendant Cooler denied that he represented having anything to do with the construction or that the construction would be in accordance with the plans. Defendant specifically denied having "any obligation to anyone to supervise or inspect the construction as it progressed."

As a third defense to both counts in plaintiff's complaint, defendant Cooler averred that plaintiff's action is barred by the statute of limitations as set forth in G. S. 1-52, which provides that actions must be commenced within three years of the date of accrual. As a fourth defense to both counts, defendant pled the provisions of G. S. 1-50, averring that plaintiff failed to commence the action within the six years allowed by that statute.

Defendant Cooler also filed a third party complaint against Indoor Comfort of Raleigh, Inc., and Holland Construction Co., Inc., seeking indemnity if held liable, alleging that "[i]f there were any defects or deficiencies in connection with the pipes ... and if the underground water system was not constructed in accordance with plans and specifications or did not meet the standards of the construction industry in North Carolina, or if there was a failure to properly supervise the job, such defects or deficiencies were due to failure of Indoor Comfort of Raleigh, Inc. and Holland Construction Co., Inc., one or both of them, to properly perform the duties and obligations which they had undertaken." Defendant Cooler's third party claim is not a subject of this appeal.

After extensive discovery, and on 19 September 1978, defendant Cooler filed a motion for summary judgment, supported by the pleadings; admissions; interrogatories; affidavits of Cooler, C. Craven Hughes, who was Vice-President of Scholz, and T.W. Porter, an engineer employed by Cooler; the depositions of Cooler and others; and certain exhibits. On 12 February 1979, judgment was entered allowing defendant Cooler's motion for summary judgment, dismissing the action. Plaintiff appeals.

*Jones, Hewson and Woolard, by Hunter M. Jones and Harry C. Hewson, for defendant and third party plaintiff appellee Harold Cooler.*

*Weinstein, Sturges, Odom, Bigger, Jonas and Campbell, by Allan W. Singer and L. Holmes Eleazer, Jr., for plaintiff appellant.*

MORRIS, Chief Judge.

Plaintiff preserves only one assignment of error on appeal: The trial court improperly granted summary judgment in favor of defendant Cooler. In order for defendant to prevail on his motion, the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any [must] show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G. S. 1A-1, Rule 56(c); *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 251 S.E. 2d 419 (1979). Plaintiff contends that there are genuine issues of material fact concerning the negligence of defendant Cooler in the performance of his professional obligations as an architect employed by Quail Hollow East Condominiums.

## I. *Architect Liability*

[1] The primary question raised by this appeal is whether a homeowner's association may sue an architect for the negligent design and preparation of plans and specifications and the negligent supervision of construction of a condominium complex where there exists no contractual privity between the

architect and the homeowner's association. Recently becoming
an area of enormous concern within the legal community, the
scope of liability of an architect for the negligent performance
of his professional duties has undergone considerable expan-
sion. This broadening of scope has been seen principally in the
relaxation of the traditional requisite of contractual privity. As
a general proposition of the law of torts, it is settled that, under
certain circumstances, one who undertakes to render services
to another which he should recognize as necessary for the pro-
tection of a third person, or his property, is subject to liability to
the third person, for injuries resulting from his failure to exer-
cise reasonable care in such undertaking. Restatement
(Second) of Torts § 324A (1965); W. Prosser, Handbook of the Law
of Torts § 93 (4th ed. 1971). This principle was applied in the
recent decision of *Davidson and Jones, Inc. v. County of New
Hanover*, 41 N.C. App. 661, 255 S.E. 2d 580 (1979), *cert. den.* 298
N.C. 295, 259 S.E. 2d 911 (1979), wherein Judge Erwin wrote for
this Court the following:

> The law imposes upon every person who enters upon an
> active course of conduct the positive duty to exercise ordi-
> nary care to protect others from harm and calls a violation of
> that duty negligence. *Council v. Dickerson's, Inc.*, 233 N.C.
> 472, 64 S.E. 2d 551 (1951); *Stroud v. Transportation Co.*, 215
> N.C. 726, 3 S.E. 2d 297 (1939). The duty to protect others
> from harm arises whenever one person is by circumstances
> placed in such a position towards another that anyone of
> ordinary sense who thinks will at once recognize that if he
> does not use ordinary care and skill in his own conduct with
> regard to those circumstances, he will cause danger of in-
> jury to the person or property of the other. *Insurance Co. v.
> Sprinkler Co.*, 266 N.C. 134, 146 S.E. 2d 53 (1966); *Honeycutt
> v. Bryan*, 240 N.C. 238, 81 S.E. 2d 653 (1954). The duty to
> exercise due care may arise out of contractual relations.
> However, a complete binding contract between the parties
> is not a prerequisite to a duty to use due care in one's
> actions in connection with an economic relationship, nor is
> it a prerequisite to suit by a contractor against an
> architect. *See Detweiler Bros., Inc. v. John Graham & Co.*,
> 412 F. Supp. 416 (E.D. Wash. 1976); *see also* 57 Am. Jur. 2d,
> Negligence, § 49, p. 398.

An architect, in the performance of his contract with his employer, is required to exercise the ability, skill, and care customarily used by architects upon such projects. 5 Am. Jur. 2d, Architects, § 8, pp. 669-70. Where breach of such contract results in foreseeable injury, economic or otherwise, to persons so situated by their economic relations, and community of interests as to impose a duty of due care, we know of no reason why an architect cannot be held liable for such injury. Liability arises from the negligent breach of a common law duty of care flowing from the parties' working relationship.

41 N.C. App. at 666-67, 255 S.E. 2d at 584. In a more recent case, *Industries, Inc. v. Construction Co.*, 42 N.C. App. 259, 257 S.E. 2d 50, *cert. denied*, 298 N.C. 296, 259 S.E. 301 (1979), we stated that "the position and authority of a supervising architect are such that he ought to labor under a duty to the prime contractor [third party] to supervise the project with due care under the circumstances, even though his sole contractual relationship is with the owner." 42 N.C. App. at 266, 257 S.E. 2d at 55. We concluded there as follows:

The additional defendant (architect) here entered upon performance of an undertaking and, by doing so, entered into a relation with the contractor and others giving rise to a duty to those who must reasonably rely upon his professional performance. The arrangement presented here of an architect having general supervisory responsibility over the contractor and other subcontractors on a construction project of this nature is a normal one in this commercial age. Each of the various participants must, to some degree, rely upon the professional performance of the other and each therefore has the responsibility of performing his task with due care. Clearly, the incidental fact of the existence of the contract between the architect and the property owner should not negative the responsibility of the architect when he enters upon a course of affirmative conduct which may be expected to affect the interest of third parties.

42 N.C. App. at 271-72, 257 S.E. 2d at 59.

In *Browning v. Levien & Co.*, 44 N.C.App. 701, 262 S.E. 2d 355 (1980), we applied *Davidson and Jones, Inc.* and *Industries, Inc.* in again considering the scope of architect liability. In *Browning*, plaintiffs were members of a limited partnership formed to build an apartment complex, having obtained a construction loan from the First National City Bank of New York. First National employed defendant and his architectural firm to inspect the construction at the time of each progress payment request and to certify the progress according to the applicable plans and specifications. Upon default by the building contractor under the loan agreement, the limited partners brought suit against defendants, alleging that defendants had been negligent in certifying the work done by the contractor. As a cross assignment of error on appeal, defendants argued that the action was improper because there was no contractual privity between plaintiffs and defendants. This Court rejected that contention and held that "when the defendants undertook to perform services for the bank, it could be reasonably foreseen that the owners of the property, the plaintiffs in this case, might rely on the certification of defendants." 44 N.C.App. at 705, 262 S.E. 2d at 358. In so holding, we recognized the general rule evolving from recent decisions that "an architect who contracts to perform services is liable for damages proximately caused by his negligence to anyone who can be reasonably foreseen as relying on that architect's performing services in a reasonable manner." 44 N.C.App. at 704-5, 262 S.E. 2d at 358. This rule is applicable to actions arising both from negligent supervision and from the negligent preparation of plans and specifications. *Industries, Inc. v. Construction Co., supra.*

We must now determine whether these particular plaintiffs — an association of condominium purchasers — may maintain this action for damages resulting from negligent design and supervision. We find language from *United Leasing Corp. v. Miller*, 45 N.C.App. 400, 263 S.E. 2d 313, 318 (1980), instructive:

Whether ... a party has placed himself in such a relation with another so that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that the other will not be injured calls for the balancing of various factors: (1) the extent to which the

transaction was intended to affect the other person; (2) the foreseeability of harm to him; (3) the degree of certainty that he suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the moral blame attached to such conduct; and (6) the policy of preventing future harm. (Citations omitted.)

Proper application of these factors requires that we consider the materials presented by both plaintiff and defendant on motion for summary judgment. From our review of those materials, it is evident that plaintiff's members fall within the range of potential plaintiffs contemplated by our earlier decisions abolishing the privity requirement. It is obvious that any architect's involvement in residential construction is intended to affect the ultimate consumer-purchaser in that the buyer anticipates and expects sound construction and solid workmanship. In addition, it is certainly foreseeable that any defect in design or negligence in supervision may bring harm to the homeowner, who is met daily with any deficiencies that may develop. Further, in this case, it is certain that the homeowners have suffered injury, as evidenced by the exhibits showing the water damage caused to the various condominium units and the extensive repairs that have already taken place within the condominium complex. We find that the allegations are sufficient to bring defendant within the purview of holdings in *Davidson and Jones, Inc., Industries, Inc.,* and *Browning.* The allegations are supported, at least nominally, by evidence presented on hearing of the motion for summary judgment. Although *Davidson and Jones, Inc.,* and *Industries, Inc.,* involved plaintiffs who were directly involved with the architect during the construction phases of the structures in those cases, in *Browning* plaintiffs were the owners of the property on which the construction took place. Under *Browning,* although the plaintiff's members did not purchase the units until after the allegedly defective pipe system had been installed, it seems entirely appropriate that third party purchasers would rely on the architect's certifications during construction as evidence that proper construction materials and methods were utilized. We, therefore, hold that, under the decisions previously discussed, plaintiff has standing to sue for damages resulting from the alleged negligence of an architect in the design and supervi-

sion of the construction of Quail Hollow East Condominiums.

Defendant argues, however, that plaintiff is barred from suit because this action involves economic loss rather than damage to property, relying on *Drilling Co. v. Nello L. Teer Co.*, 38 N.C.App. 472, 248 S.E. 2d 444 (1978). We find such a distinction neither dispositive nor persuasive. In *Industries, Inc. v. Construction Co., supra*, we distinguished *Drilling Co.* on this precise point, stating that "we do not believe the action is one for mere 'loss of profits'. Assuming, *arguendo*, that there is validity to that subtle distinction, the cause of action here is for an economic loss as a result of alleged *property damages*." 42 N.C. App. at 271, 257 S.E. 2d at 58. We find this decision applicable to the facts before us, and accordingly dismiss defendant's contention.

## II. *Statute of Limitations*

[2]   We now consider whether plaintiff's claim is barred by the statute of limitations applicable to an action in tort against an architect for negligence arising out of a construction project. Plaintiff cites several statutes which it argues are controlling in this instance, which we discuss below.

The statute limiting tort actions in this State is G. S. 1-52(5), which provides that actions involving "any other injury to the person or rights of another, not arising on contract and not hereafter enumerated" must be brought within three years from the time the right of action accrues. G. S. 1-15(b), as it read at all times pertinent to this appeal, provided:

Except where otherwise provided by statute, a cause of action, other than one for wrongful death, having as an essential element bodily injury to the person or a defect in or damage to property which originated under circumstances making the injury, defect or damage not readily apparent to the claimant at the time of its origin, is deemed to have accrued at the time the injury was discovered by the claimant, or ought reasonably to have been discovered by him, whichever event first occurs; provided that in such cases the period shall not exceed 10 years from the last act

Condominium Assoc. v. Scholz Co.

of the defendant giving rise to the claim for relief.

G. S. 1-50(5), allowing for a six-year period of limitation for actions to recover for damages to realty applicable to architects and building contractors, provides:

> No action to recover damages for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than six (6) years after the performance or furnishing of such services and construction. This limitation shall not apply to any person in actual possession and control as owner, tenant or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury for which it is proposed to bring an action.

The effect of these statutes is that date of the accrual of a cause of action is deemed to be the date of discovery of the defective or unsafe condition of a structure, and that the action must be brought within three years thereafter. Finally, G.S. 1-50(5) sets an outside limit on the right to sue, requiring that the action be brought within six years after construction is completed, except that it is not applicable "to any person in actual possession and control as owner, tenant or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury for which it is proposed to bring an action." *See generally Smith v. American Radiator & Standard Sanitary Corp.*, 38 N.C.App. 457, 248 S.E. 2d 462 (1978), *cert. denied,* 296 N.C. 586, 254 S.E. 2d 33 (1979). The defects were discovered for the first time on or about 9 October 1974. This action was instituted on 13 June 1977. It is evident that plaintiff brought its action, at least with respect to its claim for negligent supervision, within the limits prescribed in these sections, and defendant properly does not contend otherwise.

Defendant does, however, dispute the timeliness of this action with respect to plaintiff's claim based on defendant's allegedly negligent design of the plans and specifications used in the construction project. Plaintiff's claim here is based on an amendment to its complaint filed on 1 February 1979, alleging that defendant "failed to design adequate piping systems as to both plans and specifications." The date of the commencement of this claim is well beyond the three years allowed by G.S. 1-52(5), and the six years allowed by G.S. 1-50(5). Plaintiff contends, however, that the claim is timely in that it relates back to the date of the original complaint under G.S. 1A-1, Rule 15(c) of the North Carolina Rules of Civil Procedure. Defendant argues, on the other hand, that this amendment introduces "a new cause of action essentially in conflict with the cause of action previously alleged and that the previous pleadings gave no notice of the transactions and occurrences to be proved pursuant to the proposed amendment," contrary to the requirements of G.S. 1A-1, Rule 15(c).

Without deciding whether plaintiff's amendment to its complaint constitutes a new cause of action, it is our opinion that the amendment was properly allowed and that it relates back to the original complaint under Rule 15(c). In *Humphries v. Going*, 59 F.R.D. 583 (1973), the Court recognized that in North Carolina even a new cause of action can relate back to the original complaint so as to defeat the effect of a statute of limitations. The test is whether defendant ought to have known from the original complaint the facts which plaintiff attempts to add by its amendment. "A claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original pleading was interposed, *unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences to be proved pursuant to the amended pleading*." (Emphasis added.) G. S. 1A-1, Rule 15(c). *See also* Comment, Section (c) to Rule 15. We hold that in this case defendant was afforded notice of the "transactions, occurrences, or series of transactions or occurrences" contemplated by plaintiff's lawsuit.

III. *Evidence Presented on Motion for Summary Judgment.*

[3]  Finally, defendant argues that summary judgment was properly entered because plaintiff's evidence is insufficient to present a genuine issue as to any material fact concerning negligent supervision and negligent design. In the materials presented on motion for summary judgment, we find some evidence which tends to show that defendant Cooler drew the plans for the piping system; that he had the authority, if not the responsibility, to interrupt the construction process so that design and construction errors could be remedied; that defendant knew or should have known that the piping system would deteriorate if proper methods of sealing the pipes were not followed; that defendant knew at the time of construction that certain prescribed methods of construction were not being followed; and that defendant did not exercise his authority to prevent or correct the problems that appeared on the construction site. These assertions are denied by defendant, who asserts he was never obligated by contract or otherwise to oversee the construction in a supervisory capacity, and that the plans and specifications drawn and approved by him were in all respects proper. Thus, the evidence presents questions of fact as to the duties arising between the parties to this lawsuit. This question is one for the jury to resolve in its sound discretion, and in light of the standard of reasonableness previously set forth in this opinion and the decisions cited herein.

Reversed and remanded.

Judges MARTIN (Harry C.) and HILL concur.